JOHN H. ORMSBEE *v.* JAMES W. DAVIS & CO.

A garnishee's affidavit, as he makes his own case in it, must be construed most strongly against him.

An assignment by one copartner of the whole copartnership property to a trustee for the benefit of the creditors of the firm, with preferences, without the knowledge and assent of the other copartner, who is present, and capable of attending to the common business, is void, as beyond the power of one member only of a copartnership. A subsequent bill of sale of a portion of the firm property to the assignee, who was a creditor of the firm, in payment of or security for his debt, was held good, although executed by one of the copartners, without the knowledge or assent of the other, as within the competence of one member only of the firm.

THE service of the writ in this case, which was assumpsit for the recovery of a note and account due from the defendants to the plaintiff, was made February 5, 1858, by leaving a copy of the same with Sylvester J. Watson, for the purpose of attaching the property of the defendants, or of either of them, in his hands and possession. By the affidavit of Watson, as garnishee, it appeared, that he was the assignee of Watson & Field, one of the copartners being his son, under a voluntary assignment for

the benefit of their creditors; and that, prior to the service of the writ, he had received sundry goods and chattels of the defendants, the value of which had been ascertained, by sale, to be $151.47, and had collected, as shop-rent of premises in which the defendants were interested, $20.14, making in all $171.61; that the firm of Watson & Field being creditors of the defendants to the amount of $112.06, one of the defendants, James W. Davis, for himself, and also in the name of his firm, on the 7th day of December, 1858, executed to the garnishee a general assignment of all the copartnership effects of the firm of James W. Davis & Co., for the benefit of the creditors of that firm, giving preference in payment to the said claim of Watson & Field; and that subsequently, on the 24th day of December, 1857, Davis also executed, in the name of his firm, to the garnishee, an absolute bill of sale of certain specific property of the firm; that Thomas M. Hathaway, the other member of the firm of James W. Davis & Co., was not present at the execution either of the assignment or of the bill of sale, nor did the garnishee know that Hathaway had any knowledge of them at the time of their execution; nor did it appear from the garnishee's affidavit that Hathaway was absent, so that he could not be consulted about them if it had been desired. In answer to interrogatories put to him, whether Hathaway assented to any transfer or assignment of the copartnership property, or, " did not after said pretended assignment came to his knowledge, before witness, protest against the validity of the same, and against your acting thereunder," the garnishee replied: " Said Hathaway never protested against the validity of said assignment to me, nor did he protest against my acting under the same. I saw him several times after said assignment and bill of sale were made, and talked with him relative to said transfers, but never heard him dissent to the same in any way. Once, *the first time I saw him after the assignment, he did object to the same.*" The garnishee also swore, that the only property of James W. Davis & Co. that came to his hands, except the rent, $20.14, was that described in the bill of sale; that nothing was paid by him at the time of the execution of the bill of sale, but that it was made for the purpose of paying the above debt

due from Davis & Co. to Watson & Field, of which latter firm he was also assignee, and that he had applied $112.06 of the proceeds of sale of said property to the payment of that debt, and claimed to hold the residue of said proceeds and the rent collected, both under the assignment and the bill of sale, and that, after paying therefrom the expenses of defending his title to said property, and of converting the same into money, he proposed to distribute the balance, if any, according to the terms of the assignment, unless otherwise instructed. It did not appear from the affidavit of the garnishee, except as above, what the value of the property of James W. Davis & Co. was, or of what it consisted, nor was any interrogatory put to him for the purpose of ascertaining those particulars. The assignment to the garnishee, however, which was appended to his affidavit, mentioned as conveyed thereby, " a certain building occupied by us (the assignors) as a dry hop-yeast factory, and a horse shed situate in the westerly part of the city of Providence, on land leased of Chapin & Sampson, together with the lease of said land in the rear of 93 Bridgham Street in the city of Providence, together with all the fixtures, stores, and other property in and about said building and shed, belonging to us as partners as aforesaid ; also, all the right, title, and interest that we, or either of us have in the property aforesaid, as individuals, or otherwise ; also, all debts and sums of money owing to us, together with all evidences thereof, and all securities therefor." The garnishee swore, that he found no lease to James W. Davis & Co. on record, nor did he ever receive any lease from either member of the firm, nor know the terms of any lease that they might have had of the premises named in the assignment, if there was any such lease, except by hearsay ; that he had heard that there was a lease of the hop-yeast factory lot from Chapin & Sampson to Davis & Co., dated July 20, 1857, for five years, but not recorded ; that he never claimed the lease ; and that the same, with the buildings of said Davis & Co., were sold under a lien accruing prior to any transfer to him. The $20.14 rent, collected by the garnishee, was, as he swore, rent collected by him from one Jenckes, whom he permitted to occupy the shop of Davis & Co., at the rate of $100 per year, for the period

of his occupation. The goods and chattels specified in the bill of sale from Davis & Co. to the garnishee, consisted of hay in the barn, hops, alum, flour, yeast-cakes, paper boxes, and the ordinary furniture, tools, and fixtures of a dry-hop yeast factory.

*James Tillinghast,* for the attaching creditor, claimed, upon the garnishee's affidavit, that all the money received by the garnishee out of the effects of the defendants, James W. Davis & Co., was bound by the attachment; that the assignment and bill of sale were void, because executed by one copartner only, without the knowledge and assent of the other, when the other was accessible; and that, construing the affidavit as it should be construed, most strongly against the affiant, it was evident, that Hathaway not only did not assent to these transfers of the whole property by Davis to one creditor of the firm, but protested against it, as soon as they came to his knowledge. He cited to the principal point, *Dana* v. *Lull,* 17 Verm. 390; *Elliot* v. *Dudley & Bass,* 19 Barb. (N. Y.) Sup. Ct. R. 326; to the rule of construing a garnishee's affidavit, Drake on Attachment, § 672; *Sebor* v. *Armstrong,* 4 Mass. 406; *Cleveland* v. *Clapp,* 5 Ib. 201; *Kelly* v. *Bogman,* 12 Pick. 383; *United States* v. *Langton,* 5 Mason, 380.

*B. N. Lapham,* for the garnishee, contended, that from the affidavit it was fairly to be gathered, that although Hathaway, at first objected to the assignment of the copartnership property, he subsequently assented to it; and that, at all events, the bill of sale, subsequently executed in the name of the firm by Davis, was good to convey the property specified in it, it being but an application of the firm property to the payment of a debt of the firm, which is entirely within the competence of one copartner only. He cited Collyer on Partn. p. 374, § 395, and cases cited; *Tapley* v. *Butterfield,* 1 Met. 515.

AMES, C. J. Without the aid of the well settled rule, that the affidavit of a garnishee is to be construed most strongly against him, we think it fairly inferable from the affidavit before us, that the assignment in trust by Davis of the copartnership property of the defendant firm to the garnishee, under which it is claimed to be protected from this attachment, was made

without the prior assent or subsequent ratification of Hathaway, the other copartner, who, though accessible, seems to have been purposely excluded from all knowledge or part in the transaction. He objected both to the assignment and to the bill of sale when first apprised of them ; and the garnishee does not swear to any subsequent ratification of them by him, or to any fact or statement of his from which the court can infer it. Under such circumstances the assignment was void, as this court has frequently decided, and according to the clear weight of the American cases, well collated and reconciled in Hare and Wallace's Notes, 1 Am. Lead. Cases, 444–447, (ed. 1857.) In one case decided by this court, such an assignment was, as an unauthorized exclusion of the non-concurring copartner from the joint business, held to justify the court in appointing a receiver for the assigned property, with an injunction to the assignee not to intermeddle therewith, in order that the same might be distributed according to the rights of all interested therein, without regard to the deed of assignment.

The subsequent bill of sale of a portion of the copartnership property to the garnishee, in payment of, or, rather as he explains it, in security for the debt due from the defendants to Watson & Field, which had been assigned to him, seems to have been within the competence of either of the copartners, without the knowledge or assent of the other; and must be held a rightful appropriation of the property embraced in it, so far as needed, to the payment of that debt. As the shop rent was not included in the bill of sale, it must have been received by the garnishee under the assignment. *That*, therefore, together with the balance of the proceeds of the goods embraced in the bill of sale, after deducting therefrom the debt of $112.06, which has been satisfied out of those proceeds, must be held by the garnishee, without further deduction than his customary allowance, subject to this attachment. If he had paid or incurred any expenses in the sale of the goods, they should have been distinctly set forth by him in his affidavit.

The writ, therefore, in this case, was well served, and judgment must be entered for the plaintiff, for the amount of his note and account here sued.